**No. 26-60180, Consolidated with Nos. 26-60181, 26-60194**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

SUNIL S. PATEL; LAURIE M. MCANNALLY-PATEL,

*Petitioners-Appellants*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

On Appeal from the United States Tax Court
Hon. Courtney Dunbar Jones
Nos. 24344-17, 11352-18, 25268-18

# BRIEF OF NATIONAL TAXPAYERS UNION FOUNDATION AS *AMICUS CURIAE* IN SUPPORT OF AFFIRMANCE IN PART AND REVERSAL IN PART


Tyler Martinez
NATIONAL TAXPAYERS UNION FOUNDATION
122 C Street N.W., Suite 700
Washington, D.C. 20001
703.683.5700
tmartinez@ntu.org


September 21, 2026

*Counsel for* Amicus Curiae

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

***Amicus Curiae* National Taxpayers Union Foundation**: Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for *Amicus Curiae* certifies that the National Taxpayers Union Foundation is a nonprofit, tax-exempt organization under Internal Revenue Code §501(c)(3) and is incorporated in the District of Columbia. *Amicus* further states that it has no parent companies, subsidiaries, or affiliates that have issued shares to the public.

**Tyler Martinez**, as counsel for National Taxpayers Union Foundation.

In addition, the following persons and entities were already listed in the Opening Brief of Petitioners-Appellants:

**For Petitioners-Appellants**: Sunil S. Patel; Laurie McAnally-Patel; Magellan Insurance Company; Plymouth Insurance Company; Integrated Clinical Research, LLC; Strategic Clinical Research Group, LLC; Ophthalmology Specialists of Texas; Cameron T. Norris; Ryan M. Proctor; Consovoy McCarthy PLLC; David D Aughtry, Jr.; Patrick J. McCann, Jr.; and Chamberlain, Hrdlicka, White, Williams & Aughtry.

**For Respondent-Appellee**: Commissioner of Internal Revenue; Norah Bringer; Nicholas D. Doukas; Sheri S. Wilder; Emerald G. Smith; Kevin R. Oveisi; Alicia H. Eyler; David A Hubbert; William M. Paul; Sebastian Voth; and William D. Richard.

s/ Tyler Martinez
Tyler Martinez
*Counsel of* Amicus Curiae

Dated: September 21, 2026

## TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS ........................................................ i

TABLE OF CONTENTS ........................................................................................ iii

TABLE OF AUTHORITIES .................................................................................. iv

INTEREST OF *AMICUS CURIAE* ........................................................................ 1

SUMMARY OF THE ARGUMENT ........................................................................ 1

ARGUMENT ....................................................................................................... 3

I. THE IRS REFUSED TO ARTICULATE A RELEVANCY TEST, FORCING THE JUDICIARY TO DO SO INSTEAD. ................................ 4

II. THIS COURT SHOULD FOLLOW ITS SISTER COURTS IN REQUIRING A RELEVANCY TEST. ......................................................... 7

A. The Tax Court in *Patel* was Correct in Requiring a Relevancy Test, but its Test Needs Improvement. ............................................................ 8

B. This Court Should Join its Sister Circuits Requiring a Threshold Determination of Relevancy Before Applying § 7701(o). .......................... 11

III. TAXPAYERS SHOULD NOT BE PUNISHED FOR TAKING ADVANTAGE OF TAX BENEFITS CREATED BY CONGRESS. ........ 14

CONCLUSION .................................................................................................. 17

CERTIFICATE OF SERVICE ............................................................................ 18

CERTIFICATE OF COMPLIANCE ..................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Boulware v. United States*,
552 U.S. 421 (2008) .......... 15

*Busse v. Comm'r of Internal Revenue*,
479 F.2d 1147 (7th Cir. 1973) .......... 11

*Clajon Gas Co., L.P. v. Comm'r of Internal Revenue*,
354 F.3d 786 (8th Cir. 2004) .......... 11

*Duke Energy Nat. Gas Corp. v. Comm'r of Internal Revenue*,
172 F.3d 1255 (10th Cir. 1999) .......... 11

*Exxon Mobil Corp. & Affiliated Cos. v. Comm'r of Internal Revenue*,
689 F.3d 191 (2d Cir. 2012) .......... 11

*Gitlitz v. Comm'r of Internal Revenue*,
531 U.S. 206 (2001) .......... 15

*Gregory v. Helvering*,
293 U.S. 465 (1935) .......... 15

*Lamie v. U.S. Trustee*,
540 U.S. 526 (2004) .......... 6

*Liberty Global, Inc. v United States*,
174 F.4th 1208 (10th Cir. 2026) .......... 13

*Patel v. Comm'r of Internal Revenue*,
165 T.C. 171 (2025) .......... 3, 4, 8, 9

*Royal Caribbean Cruises, Ltd. v. United States*,
108 F.3d 290 (11th Cir. 1997) .......... 11

*Sacks v. Comm'r of Internal Revenue*,
69 F.3d 982 (9th Cir. 1995) .......... 6, 13

*Saginaw Bay Pipeline Co. v. United States*,
338 F.3d 600 (6th Cir. 2003) .......... 11

*Summa Holdings, Inc. v. Comm'r of Internal Revenue*,
848 F.3d 779 (6th Cir. 2017) .......... 11, 12, 15

*United Parcel Serv. of Am., Inc. v. Comm'r of Internal Revenue*,
254 F.3d 1014 (11th Cir. 2001) .......... 13

*United States v. Granderson*,
511 U.S. 39 (1994) .......... 6

*United States v. Marshall*,
798 F.3d 296 (5th Cir. 2015) .......... 11

**Statutes**

26 U.S.C. § 1361 .......... 15

26 U.S.C. § 199A .......... 3

26 U.S.C. § 408A .......... 16

26 U.S.C. § 47 .......... 15

26 U.S.C. § 6662(b)(6) .......... 16

26 U.S.C. § 6662(i) .......... 16

26 U.S.C. § 6664(c) .......... 16

26 U.S.C. § 7701(o)(1) .......... 2, 4, 12

26 U.S.C. § 7701(o)(5)(C) .......... 9

26 U.S.C. §162(a) .......... 10

**Other Authorities**

H.R. Rep. No. 111-443 (2010) .......... 10

IRS, *Additional Guidance Under the Codified Econ. Substance Doctrine & Related Penalties*,
2014-44 I.R.B. 746, 2014 WL 5039960 (Oct. 27, 2014) ..................................... 5

IRS, *Interim Guidance Under the Codification of the Econ. Substance Doctrine & Related Provisions in the Health Care & Educ. Reconciliation Act of 2010*,
2010-40 I.R.B. 411, 2010 WL 3529402 (Oct. 4, 2010) ....................................... 5

## INTEREST OF *AMICUS CURIAE*

Founded in 1973, the National Taxpayers Union Foundation ("NTUF") is a non-partisan research and educational organization dedicated to showing Americans how taxes, government spending, and regulations affect everyday life. NTUF advances principles of limited government, simple taxation, and transparency on both the state and federal level. NTUF's Taxpayer Defense Center advocates for taxpayers in the courts, produces scholarly analyses, and engages in direct litigation and *amicus curiae* briefs upholding taxpayers' rights and challenging administrative overreach by tax authorities. *Amicus* filed a brief examining the issues in this case before the Tax Court below. *See Amicus Curiae* Br. of Nat'l Taxpayers Union Found. in Supp. of Petitioners, *Patel v. Comm'r of Internal Revenue*, T.C. Nos. 24344-17, 11352-18, and 25268-18 (Aug. 21, 2024). Accordingly, *Amicus* has an institutional interest in this case. All parties consented to the filing of this brief.[1]

## SUMMARY OF THE ARGUMENT

The Economic Substance Doctrine is a dangerous tool to give the government and thus must be used rarely and only when a threshold determination that it "relevant" to use. Congress recognized the danger when it wrote 26 U.S.C.

[1] *Amicus Curiae* confirms that this brief was not authored in whole or in part by counsel for any party, and no person or entity other than *Amicus* and its counsel made a monetary contribution to the preparation or submission of this brief.

§ 7701(o), explicitly calling for its use only when the doctrine is "relevant." *See* 26 U.S.C. § 7701(o)(1) ("[i]n the case of any transaction to which the economic substance doctrine is relevant").

But the IRS refused to set guidelines down on when it will consider using the economic substance doctrine to a transaction. Instead, the government has chosen a case-by-case approach: regulation by litigation. Such an approach is untenable. First, it creates a trap for taxpayers trying to order their financial lives. Second, the litigation creates backlogs in the Tax Court and the U.S. Courts of Appeals across the country, litigating the metes and bounds of the relevancy test. And, of course, this approach costs taxpayers thousands of dollars to fight, case-by-case. Third, the situation creates the very real possibility of the IRS asking this Court to substitute the Administration's preferences for that of Congress.

In its decision below, the Tax Court did require a relevancy test before invoking § 7701(o) against the Patels. This should be affirmed. But the Tax Court decision also created what amounts to a *per se* rule that any microcaptive insurance program (or indeed, possibly any insurance program) could be subject to § 7701(o) simply because insurance is a closely-regulated industry. That's untenable and besmirches programs Congress specifically blessed. That part of the Tax Court analysis should be reversed, remanding to the IRS to promulgate a regulation through notice and comment to establish a new test on relevancy. *Amicus* suggests

presuming economic substance is satisfied in business transactions unless and until there is clear evidence that the taxpayer attempted to avoid paying taxes at all. Only then should a court begin to apply the factors of §7701(o).

This is vitally important, for the IRS should not be able to set aside a transaction as lacking economic substance if Congress created an incentive structure. Not only is seeking tax-advantageous results perfectly proper under long-established case law, Congress uses tax incentives to engineer economic outcomes. For example, Congress favors small businesses with the 26 U.S.C. § 199A deduction, encourages environmental and historical investments with tax benefits, and promotes home buying with significant tax advantages via the mortgage interest deduction. That a taxpayer engages in many of these activities precisely because they provide tax benefits does not mean they lack economic substance.

## ARGUMENT

In the decision below, the Tax Court rightly found that a threshold relevance inquiry was required before invoking § 7701(o). *See*, *e.g.*, *Patel v. Comm'r of Internal Revenue*, 165 T.C. 171, 188 (2025). Now on appeal, the Patels seek to defer economic substance doctrine matters over to state law and regulation, invoking the McCarran-Ferguson Act. *See*, *e.g.*, Opening Br. at 28. But this is a question of tax deductibility, not insurance regulation. At the same time the Tax Court below held that because insurance is closely regulated, economic substance doctrine applies. *See*

*id.* at 192. This case gives this Court the opportunity to further articulate a relevance standard for applying § 7701(o), but in doing so, this Court should craft a rule that avoids the government second-guessing any transaction undertaken for a tax benefit that is allowed by Congress.

## I. THE IRS REFUSED TO ARTICULATE A RELEVANCY TEST, FORCING THE JUDICIARY TO DO SO INSTEAD.

Under the two elements of 26 U.S.C. § 7701(o)(1), a transaction has economic substance when the transaction meaningfully changes the taxpayer's economic position, and when the transaction is supported by substantial non-tax purpose. But, in the abstract, much financial planning would trigger the economic substance doctrine. A threshold test—relevance—is necessary so that the exception does not subsume the rule. The statute itself demands it. *See id*. ("*In the case of any transaction to which the economic substance doctrine is relevant*, such transaction shall be treated as having economic substance only if…" the two elements are met) (emphasis supplied). But determining relevancy is difficult, for both taxpayer and judge alike. What is instead needed is direct guidance through rulemaking, but the Treasury and IRS have specifically avoided doing so. This leaves taxpayers in the dark and all power over whether they will be subject to defending the economic substance of their transactions up to the whim of IRS enforcement. It also multiplies litigation, as this case shows.

After the passage of § 7701(o), the IRS issued what it called "guidance" on the statutory change, but initiated no notice and comment rulemaking or other formal promulgation. *See* IRS, *Interim Guidance Under the Codification of the Econ. Substance Doctrine & Related Provisions in the Health Care & Educ. Reconciliation Act of 2010*, 2010-40 I.R.B. 411, 412, 2010 WL 3529402 (Oct. 4, 2010) ("*Interim Guidance*"). Despite being titled "Interim Guidance," the document was neither temporary nor clarifying. Indeed, there the Treasury Department and the IRS specifically stated that they "do not intend to issue general administrative guidance regarding the types of transactions to which the economic substance doctrine either applies or does not apply." *Id*. A decade later, the IRS doubled down, stating that "[w]hether the economic substance doctrine is relevant and whether a transaction should be disaggregated will be considered on a case-by-case basis, depending on the facts and circumstances of each individual case." IRS, *Additional Guidance Under the Codified Econ. Substance Doctrine & Related Penalties*, 2014-44 I.R.B. 746, 2014 WL 5039960 (Oct. 27, 2014). In other words, the IRS intended and has sought to rule-make-by-litigation economic substance questions, burdening this Court and taxpayers nation-wide to bear the costs of sussing out when § 7701(o) applies.

The danger of this approach is not only practical but also a constitutional harm. Congress makes legislative choices to promote certain activity by tax

advantages: credits, deductions, or other offsets. But "[i]f the government treats tax-advantaged transactions as shams unless they make economic sense on a pre-tax basis, then it takes away with the executive hand what it gives with the legislative." *Sacks v. Comm'r of Internal Revenue*, 69 F.3d 982, 992 (9th Cir. 1995). Neither the IRS, nor this Court, should be in the business of second-guessing the tax system policy preferences set by Congress.[2] Under our Constitution, it is Congress that creates and controls the Internal Revenue Code, not the courts.

There are therefore three distinct harms in the current rulemaking by litigation approach. First, it creates a trap for the unwary, with taxpayers learning only after the fact that the IRS disfavors their business transactions. Second, in practical terms, it produces unnecessary litigation burdens—creating backlogs in the Tax Court, this Court, and costing taxpayers thousands of dollars to fight—case-by-case, tax-year-by-tax year.[3] Third, it creates the very real possibility of the IRS asking this Court to substitute the Administration's preferences for that of Congress. What is needed

---

[2] That is even true if this Court thinks Congress made an error, for it is not the role of this Court "to rescue Congress from its drafting errors, and to provide for what [it] might think… is the preferred result," by applying a doctrine that is not relevant to the transaction at issue. *Lamie v. U.S. Trustee*, 540 U.S. 526, 542 (2004) (quoting *United States v. Granderson*, 511 U.S. 39, 68 (1994) (Kennedy, J., concurring)) (bracket supplied, ellipsis in *Lamie*).

[3] Notice, for example, that Patels' case has multiple case numbers before this Court and the Tax Court below. This is the peak of inefficiency and strains resources, both for the judiciary as well as for the defending taxpayers.

instead is formal rulemaking by Treasury to tell taxpayers when the economic substance doctrine will be "relevant" so that citizens can order their affairs without waiting for the IRS to initiate litigation in court.

## II. THIS COURT SHOULD FOLLOW ITS SISTER COURTS IN REQUIRING A RELEVANCY TEST.

*Amicus* takes the unusual step of asking for affirmance in part and reversal in part. That is because the Tax Court correctly recognized that before the two-factor inquiry of § 7701(o) could be applied, the doctrine must be first relevant to the transactions at hand. *See Patel*, 165 T.C. at 187–88 ("[t]he text before us is section 7701(o), which states in no uncertain terms that it applies to 'transaction[s] to which the economic substance doctrine is relevant.'" § 7701(o)(1)."). But the Tax Court focused too much on the nature of insurance regulation as a reason to apply the economic substance doctrine. *See*, *e.g.*, *id*. at 193 (holding "it is already well established that the economic substance doctrine applies to insurance arrangements"). This holding could be over-read to mean that insurance arrangements will always be subject to government second-guessing under the economic substance doctrine. Therefore, this Court should affirm that a threshold determination is required, but modify the specific relevancy test.

To effect the will of Congress, the economic substance doctrine should be applied narrowly, rather than as a freestanding test to be deployed whenever the IRS

disapproves of a transaction. If this Court holds accordingly, it will join the Sixth, Ninth, and Eleventh Circuits (and the Tax Court) in requiring a threshold relevancy determination. As for the relevancy test itself, *Amicus* suggests that the matter be remanded to the IRS to enunciate its policy in a notice and comment rulemaking. We might suggest a modest approach: presuming economic substance is satisfied in business transactions unless and until there is clear evidence that the taxpayer attempted to avoid paying taxes at all. Only then should a court begin to apply the factors of §7701(o).

### A. The Tax Court in *Patel* was Correct in Requiring a Relevancy Test, but its Test Needs Improvement.

The Tax Court correctly recognized that before the two-factor inquiry of § 7701(o) could be applied, the doctrine must be first relevant to the transactions at hand. *See Patel*, 165 T.C. at 187–88. But the Tax Court then held that insurance is suspect under the economic substance doctrine *See*, *e.g.*, *id*. at 193 (holding "it is already well established that the economic substance doctrine applies to insurance arrangements"). With the Tax Court getting the decision half-right, this Court should affirm in part and reverse in part.

The Tax Court recognized that a threshold determination of relevancy was required because, "[t]o put it plainly—the statute says so, right there, on its face *Id*. at 188. And the *Patel* Court held that "Congress could hardly have been clearer,"

when it "explain[ed] *how* to make the determination (as if the statute had never been enacted)." *Id*. (emphasis in original); *see also* 26 U.S.C. § 7701(o)(5)(C) ("The determination of whether the economic substance doctrine is relevant to a transaction shall be made in the same manner as if this subsection had never been enacted."). Thus, the statute "tells us that the relevancy determination is not coextensive with the two-part test set forth in section 7701(o)(1)(A) and (B)." *Id*. Because "[c]onflating the relevancy determination with the two-part test would ignore that direction and deprive the statute's reference to relevance of independent meaning." *Id*. (citing Supreme Court cases on from 1919 to 2023).

Holding that there must be a relevancy determination follows the statutory command in § 7701(o). But the Tax Court also held that the test of § 7701(o)(5)(C) gave the "courts… the same flexibility to identify relevant contexts for application of the codified doctrine as they possessed before codification." *Id*. at 192 n.16. For this case, the Tax Court found that, "over the last 90 years," court decisions often applied the economic substance doctrine in "cases involving insurance transactions and, in particular, captive insurance transactions." *Id*. at 190. The Tax Court therefore Court held "it is already well established that the economic substance doctrine applies to insurance arrangements." *Id*. at 193.

This test, based only on what a court may think is a suspect industry, is troublesome. Courts should not use § 7701(o) to disallow the use of microcaptive

insurance "if the only reason for such disallowance is that the transaction fails the economic substance doctrine as defined in this provision." H.R. Rep. No. 111-443 at 296 n.124 (2010) (House Budget Committee's report on adoption of §7701(o)). That is because § 7701(o) was "not intended to alter the tax treatment" of certain transactions that "are respected" "under longstanding judicial and administrative practice," even though they are "largely or entirely based on comparative tax advantages." *Id.* at 296. A captive insurance company, explicitly allowed for in the tax code, pools resources for small businesses to self-insure. *See*, *e.g.*, 26 U.S.C. §162(a); Opening Br. at 5 (discussing same). By declaring insurance (or at least captive insurance) suspect, the Tax Court's rule allows for future automatic application of §7701(o) to other insurance arrangements, without any further inquiry. This puts a large sector of the economy at the will of the government to apply the economic substance doctrine. Rather than a category-by-category approach, the relevancy test must be objective across industries.

Taxpayers need guidance, *before* the government starts asking questions, on how to comply with the law and avoid § 7701(o). The answer cannot be "do not use captive insurance," for that disallows what Congress blessed already in the Code. Relevancy must be more than whenever the government raises the issue or a judge thinks a transaction does not pass a subjective "I know it when I see it" style test.

That is because mere use of a Congressionally-created program for tax deductions is not enough to say a transaction lacks economic substance.

### B. This Court Should Join its Sister Circuits Requiring a Threshold Determination of Relevancy Before Applying § 7701(o).

Congress creates and controls the Code, not the courts. Congress articulated a condition for application of the economic substance doctrine: the doctrine applies only where "relevant." 26 U.S.C. § 7701(o)(1). Although the IRS may wish to employ the economic substance wherever it is unhappy with the tax consequences of a particular transaction, the doctrine can only be applied as Congress specified. Therefore, this Court should similarly find and articulate a test for when § 7701(o) is "relevant" to a taxpayer's financial transactions.[4]

The Sixth Circuit employed a relevancy requirement in *Summa Holdings, Inc. v. Commissioner of Internal Revenue*, 848 F.3d 779 (6th Cir. 2017). There, the

---

[4] If this Court finds § 7701(o)'s "relevant" provision ambiguous, it should err on the side of providing more due process to the taxpayer, for this Circuit applies the "longstanding canon of construction that if the words of a tax statute are doubtful, the doubt must be resolved against the government and in favor of the taxpayer." *United States v. Marshall*, 798 F.3d 296, 319 (5th Cir. 2015). This is the rule in the majority of Circuits. *See*, *e.g.*, *Exxon Mobil Corp. & Affiliated Cos. v. Comm'r of Internal Revenue*, 689 F.3d 191, 199 (2d Cir. 2012); *Clajon Gas Co., L.P. v. Comm'r of Internal Revenue*, 354 F.3d 786, 789 (8th Cir. 2004); *Saginaw Bay Pipeline Co. v. United States*, 338 F.3d 600, 604 (6th Cir. 2003); *Duke Energy Nat. Gas Corp. v. Comm'r of Internal Revenue*, 172 F.3d 1255, 1260 n.7 (10th Cir. 1999); *Royal Caribbean Cruises, Ltd. v. United States*, 108 F.3d 290, 294 (11th Cir. 1997); *Busse v. Comm'r of Internal Revenue*, 479 F.2d 1147, 1151 (7th Cir. 1973).

*Summa Holdings* court concluded that the economic substance doctrine was inapplicable to the case at hand because the transactions at issue did not constitute "a labeling-game sham or defied economic reality." *Id*. at 786. The Sixth Circuit recognized that the economic substance doctrine (and the related substance-over-form doctrine) did not apply to all transactions, but rather must "hold[] true to its roots—when the taxpayer's formal characterization of a transaction fails to capture economic reality and would distort the meaning of the Code in the process." *Id*. at 787.

In *Summa Holdings*, at issue was a "domestic international sales corporation (DISC)" that the taxpayers wished to transfer into a Roth IRA account, taking advantage of a tax benefit. *Id*. at 781 (punctuation removed). The Sixth Circuit held that economic substance doctrine is only relevant when "the taxpayer's formal characterization of a transaction fails to capture economic reality and would distort the meaning of the Code in the process." *Id.* at 787. Thus, because "[b]y congressional design, DISCs are all form and no substance" and "[t]he same is true for the Roth IRAs" economic substance principles did not give the IRS the power to override statutory text when it did not like the way these tax saving mechanisms were being used. *Id*. at 786.

The Sixth Circuit is not alone. The Eleventh Circuit concluded that a taxpayer's choice to finance a transaction using debt or equity does not implicate the

economic substance doctrine. *See United Parcel Serv. of Am., Inc. v. Comm'r of Internal Revenue*, 254 F.3d 1014, 1019 (11th Cir. 2001). The court ruled that while "[t]here may be no tax-independent reason for a taxpayer to choose between… different ways of financing the business [i.e., through debt or equity]," it does not follow that the decision is invalid under the economic substance doctrine because nothing in the Tax Code suggests that economic reality or taxpayer motive is relevant to that choice. *Id.* "To conclude otherwise would prohibit tax-planning." *Id.* And the Ninth Circuit held "[i]f the government treats tax-advantaged transactions as shams unless they make economic sense on a pre-tax basis, then it takes away with the executive hand what it gives with the legislative." *Sacks*, 69 F.3d at 992. This was particularly important in the context of solar water heaters, subject to a broad-based approach to lessen the 1970s oil crises. *See*, *e.g.*, *id*. at 984 ("Congress passed a package of tax and other laws to encourage people to invest in windmills, solar energy, geothermal energy, and other alternative energy sources," including the solar water heater credits at issue in that case).

What this Court should not do is follow the Tenth Circuit, which sits as a very recent outlier on the question of the relevancy test requirement before invoking § 7701(o). In *Liberty Global, Inc. v United States*, 174 F.4th 1208 (10th Cir. 2026), the Tenth Circuit gave an unworkable standard: economic substance doctrine can be invoked when a taxpayer "mechanically compl[ies] with the Tax Code." *Id*. at 1216.

One would think that all taxpayers should comply with the tax code. Furthermore, the Tenth Circuit would have courts determine a "purpose" to enactments of Congress and then try to second-guess if the intent of the taxpayer was worthy of the Congressional purpose. *See id*. at 1214 n.6; *see also id*. at 1227 (Eid, J. dissenting) ("[T]he majority abandons its responsibility to meaningfully interpret text and precedent and merely looks to the 'purpose of the statute,' effectively handing the government a blank check to declare any transactions it does not like to be within the doctrine."). This freewheeling approach to the doctrine, untethered from the text of § 7701(o), is untenable.

## III. TAXPAYERS SHOULD NOT BE PUNISHED FOR TAKING ADVANTAGE OF TAX BENEFITS CREATED BY CONGRESS.

Judges should be wary of placing themselves in the seat of the taxpayer making choices that Congress allowed. It is black letter law that taxpayers are legally permitted to structure their business transactions in a manner that produces the least amount of tax. Furthermore, Congress often creates all sorts of tax incentives to spur activity that may otherwise be under-valued or under-utilized, for both business and individual taxpayers alike. But a free-wielding IRS applying the economic substance doctrine at will threatens these incentives, and taxpayers risk real harm if the IRS applies the doctrine.

As recently as 2008, the Supreme Court recognized that it has long been the rule that a taxpayer holds the "'legal right… to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits.'" *Boulware v. United States*, 552 U.S. 421, 429 n.7 (2008) (quoting *Gregory v. Helvering*, 293 U.S. 465, 469 (1935)); *see also Summa Holdings*, 848 F.3d at 787 ("[W]ho is to say that a low-tax means of achieving a legitimate business end is any less 'substantive' than the higher-taxed alternative?"). But beyond mere tax minimization, the Internal Revenue Code offers many reasons for a person or entity to act or structure their dealings lawfully in ways that are tax advantageous.

Many statutory tax provisions allow or even invite taxpayers to engage in transactions principally or solely for their tax reasons. For example, a business may elect to file as an S corporation rather than as a C corporation—a decision often based entirely upon the tax benefits. *See, e.g.*, 26 U.S.C. § 1361 *et seq.*; *Gitlitz v. Comm'r of Internal Revenue*, 531 U.S. 206, 209 (2001) (describing benefits of S corporation election). Historic rehabilitation credits attract investors to preserve historic buildings that might otherwise be demolished or allowed to deteriorate. *See*, *e.g.*, 26 U.S.C. § 47. Even moving money from a brokerage account into a tax-favored Roth retirement account could fail both elements of § 7701(o)(1)—after all, the move was done *precisely* for the tax benefit and there is no profit at the end of

the deal because the same amount of retirement money remains. *See* 26 U.S.C. § 408A.

This is all the more perilous for taxpayers because the Code provides particularly harsh penalties when a transaction is disallowed under the economic substance doctrine, substantially raising the stakes for taxpayers in an already-confused area of law. Penalties under 26 U.S.C. § 6662(b)(6) apply to any accuracy-related underpayment attributable to "[a]ny disallowance of claimed tax benefits by reason of a transaction lacking economic substance (within the meaning of section 7701(o))[.]" Although the ordinary accuracy-related penalty is 20% of the underpayment, § 6662(i)(1) increases the penalty "attributable to one or more nondisclosed noneconomic substance transactions" to 40% of the underpayment. Moreover, the typical good faith exception to the accuracy-related penalties is explicitly unavailable when an underpayment results from a transaction disallowed as lacking economic substance, whether it was disclosed or not. 26 U.S.C. § 6664(c)(2). Taken together, these provisions mean that a taxpayer, acting in good faith and in full compliance with the text of the Code, is subject to a 20 to 40% penalty when an underpayment results from the application of the economic substance doctrine.

Judges should be wary of placing themselves in the seat of the taxpayer making choices Congress allowed. But the IRS has chosen to remain silent on what

factors it will consider before invoking § 7701(o)'s economic substance doctrine, declining to embark on a notice and comment rulemaking in lieu of case-by-case regulation by litigation. This Court should not permit this disregard of the statute to continue. The alternative is burdensome regulation via litigation and uncertainty for both the government and the taxpayer.

## CONCLUSION

For the forgoing reasons, *Amicus Curiae* respectfully requests that this Court affirm the decision below insofar as it requires a relevance test before invoking 26 U.S.C. § 7701(o), but reverse the decision below on the articulation and application of the relevancy test and remand to the IRS to conduct a notice and comment rulemaking. *Amicus* suggests presuming economic substance is satisfied in business transactions unless and until there is clear evidence that the taxpayer attempted to avoid paying taxes at all. Only then should a court begin to apply the factors of §7701(o).

Respectfully submitted,

/s/ Tyler Martinez
Tyler Martinez
NATIONAL TAXPAYERS UNION FOUNDATION
122 C Street N.W., Suite 700
Washington, D.C. 20001
(703) 683-5700
tmartinez@ntu.org

Dated: September 21, 2026

*Counsel for* Amicus Curiae

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing using the court's CM/ECF system which will automatically generate and send by email a Notice of Docket Activity to registered attorneys currently participating in this case, constituting service on those attorneys.

Dated: September 21, 2026

s/ Tyler Martienz
Tyler Martinez

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 4,090 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

Dated: September 21, 2026

s/ Tyler Martienz
Tyler Martinez