No. 26-60180

IN THE

# United States Court of Appeals for the Fifth Circuit

SUNIL S. PATEL
and
LAURIE M. MCANALLY-PATEL,
*Petitioners-Appellants,*

v.

COMMISSIONER OF INTERNAL REVENUE,
*Respondent-Appellee.*

On Appeal from the United States Tax Court
Case No. 11352-18
Judge Courtney Dunbar Jones

**BRIEF OF AMICI CURIAE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AND NATIONAL ASSOCIATION OF MANUFACTURERS IN SUPPORT OF PETITIONERS-APPELLANTS SUNIL S. PATEL AND LAURIE M. MCCANNALLY-PATEL FOR REVERSAL**


Maria C. Monaghan
Christopher J. Walker
U.S. CHAMBER LITIGATION CENTER
1615 H Street, N.W.
Washington, D.C. 20062

Erica Klenicki
Caroline McAuliffe
THE NAM LEGAL CENTER
733 10th Street, N.W., Suite 700
Washington, D.C. 20001

Robert J. Kovacev
*Counsel of Record*
Michael J. Desmond
Samuel A. Lapin
MILLER & CHEVALIER CHARTERED
900 SIXTEENTH ST. NW
WASHINGTON, DC 20006
(202) 626-5800

*Counsel for Amici Curiae*


September 21, 2026

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

In accordance with Fifth Circuit Rule 29.2, undersigned counsel of record certifies that, in addition to those already listed in the parties' briefs, the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case

**Amici:**

1. The Chamber of Commerce of the United States (the "Chamber") is a non-profit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

2. The National Association of Manufacturers (the "NAM") is a non-profit, tax-exempt organization incorporated in New York. The NAM has no parent corporation, and no publicly held company has 10% or greater ownership in the NAM.

**Counsel for Amicus:** Robert J. Kovacev, Michael J. Desmond, Samuel A. Lapin, of Miller & Chevalier Chartered. Maria C. Monaghan and Christopher J. Walker, both of the U.S. Chamber Litigation Center. Erica Klenicki and Caroline McAuliffe, both of the NAM Legal Center.

DATED: September 21, 2026

*/s/ Robert J. Kovacev*

Robert J. Kovacev

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........ C-1

TABLE OF AUTHORITIES ........ ii

IDENTITY AND INTERESTS OF AMICI CURIAE ........ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........ 3

ARGUMENT ........ 5

I. Congress Retained and Codified the Threshold Relevancy Determination in Enacting Section 7701(o). ........ 5

A. The plain text of section 7701(o) unambiguously includes a threshold "relevance" inquiry ........ 5

B. Legislative history confirms that Congress intended a threshold relevancy determination prior to any application of the economic substance doctrine. ........ 9

II. The Tax Court Here Correctly Interpreted that Section 7701 Requires a Threshold Relevancy Determination, But This Court Should Adopt a More Narrowly-Focused Relevancy Analysis ........ 12

III. The *Liberty Global* Decision Muddled the Economic Substance Analysis, Creating Uncertainty for Taxpayers. ........ 16

IV. A Clear Relevancy Framework Is Necessary for All Business Transactions and Reporting Positions. ........ 19

CONCLUSION ........ 23

## TABLE OF AUTHORITIES*

**Page(s)**

**Cases**

*ACM P'ship v. Comm'r*,
157 F.3d 231 (3d Cir. 1998) ....................6

*Caruth Corp. v. United States*,
865 F.2d 644 (5th Cir. 1989) ....................7

*Chapman v. Comm'r*,
618 F.2d 856 (1st Cir. 1980) ....................20

*CNT Invs., LLC v. Comm'r*,
144 T.C. 161 (2015) ....................20

*Coltec Indus., Inc. v. United States*,
454 F.3d 1340 (Fed. Cir. 2006) ....................6

*Dow Chem. Co. v. United States*,
435 F.3d 594 (6th Cir. 2006) ....................6

*Gregory v. Helvering*,
293 U.S. 465 (1935) ....................5

*Harty v. Comm'r*,
Nos. 23354–21, 19159–23 (T.C. filed June 24, 2026) ....................1, 8

*Horn v. Comm'r*,
968 F.2d 1229 (D.C. Cir. 1992) ....................6

*Kingdomware Techs. v. United States*,
579 U.S. 162 (2016) ....................9

*Klamath Strategic Inv. Fund v. United States*,
568 F.3d 537 (5th Cir. 2009) ....................5, 15

*Liberty Glob., Inc. v. United States*,
184 F.4th 1192 (10th Cir. 2026) ....................17

* Authorities chiefly relied upon are marked with an asterisk.

**Liberty Glob. v. United States*,
174 F.4th 1208 (10th Cir. 2026) (Eid, J., dissenting) .......................14, 16, 17, 19

*Loper Bright Enters. v. Raimondo*,
603 U.S. 396 (2024) .......................................................................................17

*Reddam v. Comm'r*,
755 F.3d 1051 (9th Cir. 2014) .........................................................................6

*Rice's Toyota World, Inc. v. Comm'r*,
752 F.2d 89 (4th Cir. 1985) ............................................................................6

*Richards v. United States*,
369 U.S. 1 (1962) ............................................................................................8

*Rogers v. Comm'r*,
157 T.C. 20 (2021) .........................................................................................21

*Southgate Master Fund, LLC v. United States*,
659 F.3d 466 (5th Cir. 2011) ....................................................................6, 13

*Sun Props., Inc. v. United States*,
220 F.2d 171 (5th Cir. 1955) ..................................................................14, 18

*Tucker v. Comm'r*,
766 F. App'x 132, 137-39 (5th Cir. 2019). ...............................................5, 15

*United States v. Gen. Geophysical Co.*,
296 F.2d 86 (5th Cir. 1961) ..........................................................................18

*United States v. Generes*,
405 U.S. 93 (1972) .........................................................................................20

*Waterman S.S. Corp. v. Comm'r*,
430 F.2d 1185 (5th Cir. 1970) ................................................................14, 21

*Winn-Dixie Stores, Inc. v. Comm'r*,
254 F.3d 1313 (11th Cir. 2001) .......................................................................6

**Statutes**

I.R.C. § 6662(b)(6) ...............................................................................19, 22

I.R.C. § 6662(i) ...............................................................................................22

I.R.C. § 6662(i)(2)....................19

I.R.C. § 6664(c)(2)....................19

I.R.C. § 6664(d)....................19

I.R.C. § 7701(o)(1)....................8

I.R.C. § 7701(o)(1)(A)....................6, 7

I.R.C. § 7701(o)(1)(B)....................6, 7

I.R.C. § 7701(o)(5)(C)....................7, 9

I.R.C. § 7701(o)(C)(5)....................9

Health Care and Education Reconciliation Act of 2010,
Pub. L. No. 111-152, 124 Stat. 1029, Title I, § 1409 (2010)....................5

Tax Reduction and Reform Act of 2007,
H.R. 3970, 110th Cong. § 3501 (2007)....................10

**Other Authorities**

CARE Act of 2003, S. Rep. No. 108-11 (2003)....................10

Charlene Luke, *The Relevance Games: Congress's Choices for Economic Substance Gamemakers*,
66 TAX LAW. 551, 562-63 (2013)....................9

H.R. Rep. No. 108-755 (2004)....................10

H.R. Rep. No. 109-455 (2006)....................10

H.R. Rep. No. 111-443, pt. 1 (2010)....................5, 11, 17, 19

N.Y. STATE BAR ASS'N TAX SECTION, SUMMARY REPORT ON THE PROVISIONS OF RECENT SENATE BILLS THAT WOULD CODIFY THE ECONOMIC SUBSTANCE DOCTRINE 3, 8 (2003)....................10

S. Rep. No. 109-336 (2006)....................10

## IDENTITY AND INTERESTS OF AMICI CURIAE[1]

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business organization. As the nation's leading advocate for business, the Chamber represents companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus curiae briefs in cases like this one, that raise issues of concern to the nation's business community.[2]

The National Association of Manufacturers ("NAM") is the largest manufacturing association in the United States, representing small and large manufacturers in all 50 States and in every industrial sector. Manufacturing employs

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), amici curiae state that no counsel for any party authored this brief in whole or in part and no entity or person, aside from amici curiae, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief. All parties consented to the filing of this brief.

[2] Indeed, the Chamber has filed numerous amicus briefs, including in this case before the Tax Court, advocating for such certainty and clarity when it comes to the economic substance doctrine. *See, e.g.*, Brief for Chamber of Commerce of the United States, et al. as Amici Curiae Supporting Pet'rs, *Harty v. Comm'r*, Nos. 23354–21, 19159–23 (T.C. filed June 24, 2026); Brief for Chamber of Commerce of the United States, et al. as Amici Curiae Supporting Pet'rs, *Patel v. Comm'r*, Nos. 24344–17, 11352–18, 25268–18 (T.C. filed Aug. 22, 2024); Brief for Chamber of Commerce of the United States, et al. as Amici Curiae Supporting Pet'r, *Liberty Glob. v. United States*, No. 23–1410 (10th Cir. filed May 7, 2024).

13 million men and women in the United States, contributes $2.85 trillion to the U.S. economy annually, has the largest economic impact of any major sector, and accounts for over half of all private-sector research and development in the nation. The NAM is the voice of the manufacturing community and the leading advocate for a policy agenda that helps manufacturers compete in the global economy and create jobs across the United States.[3]

Amici have a strong interest in the outcome of this appeal. Their members depend on a predictable and certain application of tax laws both to plan their business activities and to determine with some level of certainty their tax payment and reporting obligations. A decision holding that the codified economic substance doctrine does not include a threshold relevancy requirement would excessively broaden the doctrine's scope, could result in its presumptive application, and would upend reliance on established tax rules for a broad range of business transactions and tax return reporting positions, ranging from projects incentivized by tax credits and accelerated cost recovery to routine tax elections. Such an interpretation would

[3] Like the Chamber, the NAM has also routinely filed amicus briefs, including in this case before the Tax Court, advocating for the advancement of these goals. *See*, *e.g.*, Brief of the National Association of Manufacturers as Amicus Curiae in Support of Neither Party, *Patel v. Comm'r*, Nos. 24344–17, 11352–18, 25268–18 (T.C. filed Aug. 23, 2024).

create uncertainty and confusion for companies' business planning, risk assessment and tax and financial statement reporting.

## INTRODUCTION AND SUMMARY OF ARGUMENT

When the economic substance doctrine, as codified in section 7701(o) of the Internal Revenue Code (the "Code"), should apply to override the normative tax treatment of a transaction that complies with the Code and any applicable Treasury regulations is a fundamental question in the administration of Federal tax law.[4] Congress answered that question in the text of section 7701(o)(1) & (5)(C), which limits the doctrine's application to transactions for which the doctrine is relevant, based on pre-codification common law precedent. In this case, the Tax Court correctly held, in an opinion reviewed by the full Tax Court,[5] that the plain language of "the statute requires a relevancy determination," and that the relevancy determination requires analysis separate from, and preceding, the application of the statute's two-prong test for triggering the doctrine. ROA.26-60180.116673-116674. Accordingly, the Tax Court made clear that Congress meant what it said when it included provisions requiring courts to establish relevancy before engaging in the

[4] Unless indicated otherwise, all "section" references are to the Internal Revenue Code of 1986, as amended.

[5] The Tax Court issues "regular" or "T.C." opinions in cases that involve important legal issues and that are useful as precedent. Certain regular opinions involving novel issues with broad application may be reviewed by the full Court and are designated as such.

two-prong economic analysis prescribed in section 7701(o)(1). ROA.26-60180.116673-116675.

The threshold relevancy determination is not only required by the plain language of the statute, it is also crucial to enforcing the limits on the economic substance doctrine Congress intended. Since the Tax Court's decision below, the U.S. Court of Appeals for the Tenth Circuit cast doubt on the existence of a threshold relevancy determination in its ruling in *Liberty Global, Inc. v. United States*. Absent a clear framework for determining the scope of and limits on the economic substance doctrine, it is difficult, if not impossible, for businesses to plan their activities. Therefore, Amici respectfully urge this Court explicitly to recognize the existence of a separate, threshold relevancy determination that courts must undertake before proceeding to apply section 7701(o)'s two-prong test. That position accords with this Circuit's economic substance jurisprudence, which rejects the notion that the doctrine provides the Internal Revenue Service ("IRS") with a roving commission to challenge any and all transactions and return reporting positions that cross its path on economic substance grounds.

## ARGUMENT

### I. Congress Retained and Codified the Threshold Relevancy Determination in Enacting Section 7701(o).

#### A. The plain text of section 7701(o) unambiguously includes a threshold "relevance" inquiry.

In 2010, Congress codified the economic substance doctrine at section 7701(o) of the Code. Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029, Title I, § 1409 (2010). Often traced back to the U.S. Supreme Court's decision in *Gregory v. Helvering*, 293 U.S. 465 (1935), the economic substance doctrine began as a limited common law doctrine that courts applied "to enforce the legislative purpose of the Code by preventing taxpayers from reaping tax benefits from transactions lacking in economic reality." *Klamath Strategic Inv. Fund v. United States*, 568 F.3d 537, 543 (5th Cir. 2009); *see also* H.R. Rep. No. 111-443, pt. 1, at 292 (2010) ("[T]his doctrine denies tax benefits arising from transactions that do not result in a meaningful change to the taxpayer's economic position other than a purported reduction in federal income tax."). As the doctrine developed over the decades, courts generally agreed that two factors would govern its application: (1) whether the transaction had economic substance beyond tax benefits and (2) whether the taxpayer had a nontax business purpose for entering the disputed transaction. *See* ROA.26-60180.116670-116671. Prior to codification, however, the various federal courts of appeals could not agree on how to apply those

factors; some (including this Court) applied them as a conjunctive test,[6] others applied them disjunctively,[7] and yet others included them in a looser, holistic analysis.[8]

Amid this ambiguity, Congress stepped in to clarify when and, in certain respects how, the doctrine applies. Section 7701(o)(1) provides:

> In the case of any transaction to which the economic substance doctrine is relevant, such transaction shall be treated as having economic substance only if—
>
> > (A) the transaction changes in a meaningful way (apart from Federal income tax effects) the taxpayer's economic position, and
> >
> > (B) the taxpayer has a substantial purpose (apart from Federal income tax effects) for entering into such transaction.

I.R.C. § 7701(o)(1)(A)–(B). Congress, therefore, resolved the circuit split and confirmed that the two historical prongs of the economic substance doctrine—(1)

---

[6] *See, e.g.*, *Southgate Master Fund, LLC v. United States*, 659 F.3d 466, 480 (5th Cir. 2011) ("[T]he transaction must exhibit objective economic reality, a subjectively genuine business purpose, and some motivation other than tax avoidance."); *Dow Chem. Co. v. United States*, 435 F.3d 594, 599 (6th Cir. 2006); *Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1355 (Fed. Cir. 2006); *Winn-Dixie Stores, Inc. v. Comm'r*, 254 F.3d 1313, 1316 (11th Cir. 2001).

[7] *See, e.g.*, *Horn v. Comm'r*, 968 F.2d 1229, 1237 (D.C. Cir. 1992); *Rice's Toyota World, Inc. v. Comm'r*, 752 F.2d 89, 91 (4th Cir. 1985).

[8] *See, e.g.*, *ACM P'ship v. Comm'r*, 157 F.3d 231 (3d Cir. 1998); *Reddam v. Comm'r*, 755 F.3d 1051 (9th Cir. 2014).

objective economic effect and (2) subjective non-tax business purpose—apply conjunctively. *See Id.*

Congress made clear that, apart from resolving that circuit split on the conjunctive versus disjunctive test, it did not intend to expand the reach of the economic substance doctrine beyond the limited scope of common law jurisprudence. Indeed, Congress explicitly cabined the scope of the economic substance doctrine in order to ensure that it would not presumptively apply to an unlimited range of transactions and tax reporting positions. Specifically, the opening clause of section 7701(o) expressly narrows the scope of the doctrine so that it applies only "[i]n the case of any transaction to which the economic substance doctrine is *relevant*." *Id.* (emphasis added). The statute goes on to provide that "[t]he determination of whether the economic substance doctrine is relevant to a transaction shall be made in the same manner as if this subsection had never been enacted." I.R.C. § 7701(o)(5)(C). The term "transaction" alone, stripped of a relevancy determination, could be read to include virtually any business arrangement, ranging from charitable contributions by businesses to tax-exempt organizations to the complex, cross border structure at issue in *Liberty Global*. *See, e.g.*, *Caruth Corp. v. United States*, 865 F.2d 644 (5th Cir. 1989) (declining the disregard the charitable contribution of appreciated stock under the common law economic substance doctrine). Accordingly, the statutory limitation of the economic

substance doctrine to "relevant" transactions shows Congressional intent to respect the historic limitations on that doctrine.

The statute also makes clear that the relevancy determination must occur *before* courts begin to apply the two-prong test. To begin, the introductory language in section 7701(o)(1) specifies that the universe of transactions to which it applies is limited to "any transaction to which the economic substance doctrine is relevant." I.R.C. § 7701(o)(1). When a transaction is within that limited universe, "such transaction shall be treated as having economic substance only if" it satisfies the two-prong test in section 7701(o)(1)(A) and (B). *Id.* The plain text of section 7701(o)(1) makes clear that a separate relevancy determination must be completed before invoking the two-prong test. *See Richards v. United States*, 369 U.S. 1, 9 (1962) (absent an indication to the contrary, courts read statutory text "with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used"). It follows, therefore, that for transactions to which the doctrine is not relevant, the two-prong test never comes into play.[9]

---

[9] Notwithstanding this clear statutory instruction, the IRS has, on brief in another case currently pending in Tax Court, continued to dispute whether section 7701(o)(1) requires a "threshold" relevancy determination. *See Harty v. Comm'r*, No. 23354-21; No. 19159-23, Answering Brief for Respondent, Dkt. No. 370 at 108 (June 24, 2026) ("Patel does not use the word threshold, and the relevancy determination it articulates is not a threshold inquiry.").

If section 7701(o)'s introductory text was not clear enough, the special rule in section 7701(o)(5)(C) eliminates any remaining question regarding the threshold relevancy determination. Section 7701(o)(5)(C) first indicates the mandatory nature of the relevancy determination, directing that "[t]he determination of whether the economic substance doctrine is relevant to a transaction *shall* be made." I.R.C. § 7701(o)(C)(5) (emphasis added). *See also Kingdomware Techs. v. United States*, 579 U.S. 162, 171 (2016) ("[T]he word 'shall' usually connotes a requirement."). And then the statute instructs courts and the IRS to make the relevancy determination based on common law principles, as if the doctrine had never been codified. I.R.C. § 7701(o)(5)(C).

**B. Legislative history confirms that Congress intended a threshold relevancy determination prior to any application of the economic substance doctrine.**

The Tax Court's conclusion is bolstered by the legislative history of section 7701(o). *See* ROA.26-60180.116674-116675. ("[T]he legislative history of the codified economic substance doctrine is fully consistent with our interpretation that section 7701(o)(1) requires a relevancy determination."). Section 7701(o) represents the culmination of over a decade's worth of proposals to codify the economic substance doctrine. *See* Charlene Luke, *The Relevance Games: Congress's Choices for Economic Substance Gamemakers*, 66 TAX LAW. 551, 562-63 (2013). Until 2004, versions of proposed legislation to codify the economic substance doctrine did

not include any limitation to transactions for which it was "relevant." *See, e.g.*, "Clarification of Economic Substance Doctrine," of the CARE Act of 2003, S. Rep. No. 108-11, at 76 (2003). Starting in 2004, in response to concerns raised by commentators that the early proposals, lacking a threshold relevancy determination, "may be read as implying that the economic substance doctrine applies to every transaction,"[10] Congress added an express relevancy requirement. *See, e.g.*, H.R. Rep. No. 108-755, at 666 (2004); H.R. Rep. No. 109-455, at 222 (2006); S. Rep. No. 109-336, at 138-39 (2006). And in 2007, Congress added to legislative proposals the rule, now codified in section 7701(o)(5)(C), that "[t]he determination of whether the economic substance doctrine is relevant to a transaction shall be made in the same manner as if this subsection had never been enacted." *See* Tax Reduction and Reform Act of 2007, H.R. 3970, 110th Cong. § 3501 (2007) (as introduced in the House, Oct. 25, 2007).

Further, Congress was aware when it enacted section 7701(o) in 2010 that the common law economic substance doctrine did not presumptively apply to all transactions and return reporting positions and made clear that section 7701(o)

---

[10] AM. BAR ASS'N, COMMENTS ON THE PROPOSED CODIFICATION OF THE ECONOMIC SUBSTANCE DOCTRINE 5 (2003); *see also* N.Y. STATE BAR ASS'N TAX SECTION, SUMMARY REPORT ON THE PROVISIONS OF RECENT SENATE BILLS THAT WOULD CODIFY THE ECONOMIC SUBSTANCE DOCTRINE 3, 8 (2003) (identifying an extensive list of routine transactions that might not satisfy the conjunctive test, but which had long been considered outside the scope of the doctrine by the IRS and the courts).

would retain that limited scope. The legislative history states that "[i]f the tax benefits are clearly consistent with all applicable provisions of the Code and the purposes of such provisions, it is not intended that such tax benefits be disallowed if the only reason for such disallowance is that the transaction fails the economic substance doctrine." H.R. Rep. No. 111-443, pt. 1, at 295-96 n.124 (2010). For example, section 7701(o) was "not intended to alter the tax treatment of certain basic business transactions that, under longstanding judicial and administrative practice are respected, merely because the choice between meaningful economic alternatives is largely or entirely based on comparative tax advantages." *Id.* at 296. An "illustrative and not exclusive" list of transactions outside the scope of the economic substance doctrine includes:

> (1) the choice between capitalizing a business enterprise with debt or equity; (2) a U.S. person's choice between utilizing a foreign corporation or a domestic corporation to make a foreign investment; (3) the choice to enter a transaction or series of transactions that constitute a corporate organization or reorganization under subchapter C; and (4) the choice to utilize a related-party entity in a transaction, provided that the arm's length standard of section 482 and other applicable concepts are satisfied.

*Id.* & n.125.

The evolution of the proposed text, along with the accompanying legislative history, demonstrates that Congress expected the IRS and the judiciary to give effect to the language on "relevance" added to section 7701(o)(1) and 7701(o)(5)(C) in determining whether to utilize the statute's conjunctive test.

## II. The Tax Court Here Correctly Interpreted that Section 7701 Requires a Threshold Relevancy Determination, But This Court Should Adopt a More Narrowly-Focused Relevancy Analysis.

Based on the plain, unambiguous language of the statute, the Tax Court in this case correctly and "easily conclude[d] that the statute requires a relevancy determination," finding that "the statute says so, right there, on its face." ROA.26-60180.116673. As the Tax Court explained:

> First, section 7701(o)(1) signals that a determination is required by conditioning application of the doctrine on certain circumstances—namely, the doctrine applies *if* there is a transaction to which it is relevant. Next, section 7701(o)(5) expressly directs us to make the determination (whether the doctrine is relevant) and, if that were not enough, the same provision explains *how* to make the determination (as if the statute had never been enacted). In short, Congress could hardly have been clearer, at least on this narrow point.

ROA.26-60180.116673. The Tax Court further correctly concluded that to hold otherwise would be to "ignore that direction and deprive the statute's reference to relevance of independent meaning. ROA.26-60180.116673. (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute." (internal quotations omitted))). Confirming clearly the existence of a threshold relevancy determination, the Tax Court's ruling below reflects the clarity and uniformity of application of the economic substance doctrine sought by Congress when it enacted section 7701(o).

The analysis the Tax Court employed in making its relevancy determination is, however, imprecise and insufficiently focused on the tax benefit at issue. In

applying the relevancy determination, the Tax Court correctly looked to pre-codification economic substance jurisprudence to determine whether courts previously considered economic substance to be relevant to the transaction at hand. In so doing, however, the *Patel* court below found the doctrine relevant based on the mere fact that its "survey of caselaw revealed a variety of circumstances in which the doctrine has been applied," including, "as relevant here, cases involving insurance transactions and, in particular, captive insurance transactions." ROA.26-60180.116675. If read to endorse the application of economic substance to any transaction involving insurance, this is an overbroad application of pre-codification jurisprudence to the relevancy analysis. That a court once decided a case involving insurance on economic substance grounds does not translate into all transactions involving insurance being fair game. Nor, in making the threshold relevancy determination, does the fact that this Court applied economic substance with respect to a transaction involving distressed debt as part of a structured tax strategy designed to produce massive tax benefits not intended by Congress mean that the economic substance doctrine is relevant to every transaction the IRS may examine that involves debt, or even distressed debt. *See Southgate Master Fund, LLC v. United States*, 659 F.3d 466 (5th Cir. 2011), *aff'g* 651 F. Supp. 2d 596, 654 (N.D. Tex. 2009).

This Court's pre-codification case law does not countenance such a sweeping approach. A more narrowly-focused relevancy analysis, guided by the requirements of the underlying statute and tax benefit it might provide, would be in harmony with Fifth Circuit precedent. Because "[t]he words of the taxing statutes which describe commercial transactions are . . . to be understood to refer to transactions entered into for commercial purposes," the doctrine is relevant only where under the relevant statute it is necessary to distinguish between commercial transactions and "[t]ransactions entered into not for commercial purposes but only to escape taxation." *Waterman S.S. Corp. v. Comm'r*, 430 F.2d 1185, 1193 (5th Cir. 1970), *overruled on other grounds*, *Utley v. Comm'r*, 906 F.2d 1033, 1037 n.7 (5th Cir.1990); *accord Liberty Glob. v. United States*, 174 F.4th 1208, 1228 (10th Cir. 2026) (Eid, J., dissenting) ("In essence, the doctrine adds a substance requirement to provisions dealing with economic realities."). Where, on the other hand, a taxpayer enters into a genuine commercial transaction within the terms of the Code or where tax benefits offered under the Code do not depend on a commercial transaction, the doctrine is not applicable. *Compare Waterman S.S. Corp.*, 430 F.2d at 1192 (the economic substance doctrine "should not be considered a talisman of magical powers, since in numerous situations the form by which a transaction is effected does influence or control its tax consequences" (internal quotations omitted)), *and Sun Props., Inc. v. United States*, 220 F.2d 171, 175 (5th Cir. 1955) (declining "to impose

a court-made requirement of a business purpose independent from taking a gain or loss" given the "vast numbers of sales have been made and are still being made for the purpose of taking gains and losses at times which provide the optimum tax benefits"), *with Tucker v. Comm'r*, 766 F. App'x 132, 137-39 (5th Cir. 2019) (affirming the Tax Court's determination that "Congress 'neither contemplated nor intended to encourage this type of mechanical manipulation of the [subpart F and check-the-box] rules' that permits Mr. Tucker to avoid recognizing a $51 million gain"), *and Klamath Strategic Inv. Fund*, 568 F.3d at 544 (applying the economic substance doctrine to determine whether loans entered into by the taxpayer should be respected for purposes of the partnership debt provisions of section 752).

Amici respectfully suggest that the Court clarify the relevancy determination to reflect this reality, requiring close alignment between the facts and statutory provisions involved in pre-codification precedent invoking economic substance and the transaction under review in order to determine whether the doctrine is relevant.[11]

[11] For newly enacted provisions that have not been subject to pre-codification scrutiny, courts should continue to closely review the language and purpose of the relevant statute to determine whether Congress intended that its normative application can be overridden by the codified doctrine, referencing analogous pre-codification precedent but not expansively applying it.

## III. The *Liberty Global* Decision Muddled the Economic Substance Analysis, Creating Uncertainty for Taxpayers.

On appeal from the U.S. District Court for the District of Colorado, a divided panel of the Tenth Circuit in *Liberty Global* affirmed the lower court's holding that a series of related-party transactions involving the taxpayer's foreign affiliates lacked economic substance. As such, the Tenth Circuit held that the tax benefits derived from the transaction were, therefore, properly disregarded. In so affirming, the majority, while not explicitly rejecting the existence of a threshold relevancy determination, waved it away as a "red herring." 174 F.4th at 1213 n.6 (Eid, J., dissenting). Rather than engaging in an analysis of "the caselaw before enactment of § 7701(o) to discern any general principles that determine when the economic substance doctrine is relevant," as required under section 7701(o)(5)(C), the majority in *Liberty Global* skipped the threshold relevancy determination and collapsed it into a generalized appeal to statutory purpose, as pointed out by the dissent. *Id.* at 1227-28 (Eid, J., dissenting). By removing a meaningful relevancy determination from the economic substance doctrine, the *Liberty Global* majority "effectively hand[s] the government a blank check to declare any transactions it does not like to be within the doctrine." *Id.* at 1227 (Eid, J., dissenting). The decision in *Liberty Global*, therefore, risks pushing the economic substance doctrine back into the pre-codified murk, leaving taxpayers to contend with the type of "impressionistic and malleable," standard disfavored by the Supreme Court in other contexts, that "invites different

results in like cases and is therefore arbitrary in practice."[12] *Loper Bright Enters. v. Raimondo*, 603 U.S. 396, 408 (2024) (internal quotations omitted).

Enacted against the backdrop of a circuit split as to one aspect of the economic substance doctrine (*i.e.*, the conjunctive versus disjunctive test), section 7701(o)'s principal legislative purpose was "to provide greater clarity and uniformity in the application of the economic substance doctrine." H.R. Rep. No. 111-443, pt. 1, at 295. As discussed in Part II, the Tax Court's decision below reflects the clarity and uniformity that Congress intended in the application of the economic substance doctrine and the tax law in general. It affirmed that the limited scope of the economic substance doctrine still applies under section 7701(o). And in recognition of the particular importance of clarity in this area, the Tax Court registered its disagreement with other courts that got this point wrong. *See* ROA.26-60180.116673 n.14. But the Tenth Circuit's ruling in *Liberty Global*, issued while this appeal was pending, threatens the Tax Court's effort to establish a clear and workable framework for applying the economic substance doctrine. *See* 174 F.4th 1208 (Eid, J., dissenting); *see also LGI Rehearing Denial*, 184 F.4th at 1193–94 (Eid, J., joined by Hartz & Tymkovich, JJ., dissenting from the denial of rehearing *en banc*) (noting that "the

[12] On August 17, 2026, the Tenth Circuit denied the taxpayer's request for rehearing and rehearing *en banc*. *Liberty Glob., Inc. v. United States*, 184 F.4th 1192, 1193 (10th Cir. 2026) (hereinafter "*LGI Rehearing Denial*").

panel majority's holding that the economic substance doctrine is relevant when taxpayers attempt 'to obtain a benefit not intended by Congress' gives too much deference to courts and the government to provide necessary clarity to taxpayers" and is inconsistent with the Tax Court's decision in *Patel*).

The "impressionistic and malleable" application of the economic substance doctrine sanctioned by the majority in *Liberty Global* conflicts with this Court's economic substance jurisprudence. As discussed in Part II above, this Court has long acknowledged and enforced the limits of the doctrine. In light of this Court's pre-codification case law, section 7701(o) does "not constitute a license to courts [or the IRS] to distort the laws or to write in new provisions." *United States v. Gen. Geophysical Co.*, 296 F.2d 86, 89 (5th Cir. 1961). This Court has long declined to turn the economic substance doctrine into permission for the IRS to tell taxpayers, "You did this under suspicious circumstances; therefore, you did not do it at all, and you are not entitled to any tax advantages." *See Sun Props.*, 220 F.2d at 173. Yet that is precisely what the majority in *Liberty Global* did. Amici, therefore, urge the Court to reject the Tenth Circuit's overly expansive application of the economic substance doctrine in *Liberty Global*, to reaffirm the limits of the doctrine in the context of section 7701(o), and to clarify the *Patel* court's relevancy analysis to reflect these longstanding limits.

## IV. A Clear Relevancy Framework Is Necessary for All Business Transactions and Reporting Positions.

The uncertainty and potential expansion of the economic substance doctrine that results from *Liberty Global* are contrary to section 7701(o)'s legislative purpose and risk stymieing a broad range of business activities and injecting uncertainty into the federal tax treatment and reporting of those activities. Congress intended that section 7701(o)—and the strict liability civil penalty that accompanies it[13]—would deter "unintended consequences." H.R. Rep. No. 111-443, pt. 1, at 295. But section 7701(o) cannot be an effective deterrent without clarity as to its scope. Taxpayers, try as they might, cannot avoid disfavored transactions without a clear idea of what they might be.

Indeed, allowing the IRS to wield the economic substance doctrine "as a free-floating override to a tax-favorable result," *Liberty Global*, 174 F.4th at 1231 (Eid, J., dissenting), will invariably lead to more disputes and litigation, not fewer. Consider, for example, Section 6418, which permits the purchase of certain tax

[13] Section 6662(b)(6) imposes an accuracy-related penalty equal to 20 percent of an underpayment of tax attributable to "[a]ny disallowance of claimed tax benefits by reason of a transaction lacking economic substance (within the meaning of section 7701(o)) or failing to meet the requirements of any similar rule of law." I.R.C. § 6662(b)(6). This penalty increases to 40 percent of the underpayment of tax if "the relevant facts affecting the tax treatment are not adequately disclosed in the return nor in a statement attached to the return." *Id.* at (i)(2). Taxpayers may not argue defenses, such as reasonable cause and good faith, to eliminate or reduce the economic substance penalty. I.R.C. § 6664(c)(2), (d).

credits from the taxpayer engaging in qualifying activity by an unrelated taxpayer not engaging in any such activity. By definition, the purchaser of a transferable credit does so for tax reasons: to obtain a tax credit to offset against its tax liability. Without the clarity provided by a threshold relevancy requirement, the economic substance doctrine would frustrate congressional intent and render the transferability provisions a dead letter because by definition no such sale would ever satisfy the economic substance test.

Clarity and uniformity in the tax system are also essential for the efficient operation of our free market economy. *See United States v. Generes*, 405 U.S. 93, 105 (1972) (In tax law, "certainty is desirable."); *Chapman v. Comm'r*, 618 F.2d 856, 874 (1st Cir. 1980) ("[M]uch tax planning must proceed on the basis of settled rules."); *CNT Invs., LLC v. Comm'r*, 144 T.C. 161 at 192-93 (2015) (observing that having "clear, concrete rules . . . (1) facilitates smooth operation of our voluntary compliance system, (2) helps to render that system transparent and administrable, and (3) furthers the free market economy by permitting taxpayers to know in advance the tax consequences of their transactions").

Certainty is critical in the context of the economic substance doctrine. Section 7701(o) imposes on businesses an additional burden, beyond determining that their activities and strategic decisions comply with the language of the Code and regulations, of predicting whether the IRS will consider their compliance good

enough. *Cf. Waterman S.S. Corp.*, 430 F.2d at 1194 (observing "that consistency of decision in the federal tax field is indispensable for taxpayers and their advisors who need to predict the tax consequences of their transactions"). Given the expansive scope of the federal tax law, the maxim that "men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them," has particular application. *Rogers v. Comm'r*, 157 T.C. 20, 41 (2021) (quoting *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021)). Tracking the text of section 7701(o) by requiring a threshold relevancy determination, properly grounded in identifiable pre-codification precedent, ensures that square corners can be turned by taxpayers in planning and reporting their business and financial affairs.

*Liberty Global* turns section 7701(o)'s adoption of pre-codification jurisprudence into an unbounded license for the IRS to recharacterize and disregard transactions whenever and however it sees fit. This was never Congress's objective. Nor is it consistent with this Court's economic substance precedent. Further, allowing the IRS to use section 7701(o) to recast taxpayer transactions first and ask questions about relevance later (if ever) imposes severe economic costs on taxpayers and the economy as a whole. Those costs will come, first, in the form of increased audit and litigation costs, as taxpayers will more frequently need to defend themselves in fact-intensive economic substance disputes. These costs are increased

by a strict liability penalty the Code imposes for transactions lacking in economic substance, equal to up to 40% of an understatement of tax attributable to a failure to satisfy section 7701(o). I.R.C. § 6662(b)(6), (i). Absent the congressionally-mandated relevancy determination, section 7701(o) is transformed from a narrow anti-abuse regime focused on preserving Congressional intent into a cudgel for the IRS to wield against taxpayers who engage in any transaction the IRS may arbitrarily decide it does not like. These harms from increased tax costs flow down to consumers; increased litigation costs, inefficiencies, and diversion of resources all lead to higher prices and reduced output.

## CONCLUSION

For the foregoing reasons, Amici respectfully urge the Court to adopt the Tax Court's well-reasoned holding that section 7701(o) includes a meaningful relevancy determination, with the clarification that relevancy should be determined by reference to the specific facts and statutory provisions in pre-codification economic substance precedent.

DATED: September 21, 2026

Respectfully submitted,

*<u>/s/ Robert J. Kovacev</u>*

Robert J. Kovacev
Michael J. Desmond
Samuel A. Lapin
MILLER & CHEVALIER CHARTERED
900 Sixteenth St. NW
Washington, DC 20006
Telephone: (202) 626-5800
Facsimile: (202) 626-5801
Email: mdesmond@milchev.com
Email: rkovacev@milchev.com
Email: slapin@milchev.com
*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2026, I electronically filed the foregoing Brief of Amicus Curiae with the Clerk of the Fifth Circuit Court using the CM/ECF System, which will send notice of such filing to all attorneys of record in this matter.

DATED: September 21, 2026

*/s/ Robert J. Kovacev*
Robert J. Kovacev
*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the Contents and Form requirements of Fed. R. App. P. 29(a)(4) and 5th Cir. R. 29.2;

2. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 5,261words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f);

3. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it uses Times New Roman 14-point type face throughout, which is proportionally spaced and includes serifs.

DATED: September 21, 2026

*/s/ Robert J. Kovacev*
Robert J. Kovacev
*Counsel for Amici Curiae*